IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOHN D. LACH,

          Plaintiff,

     v.

MERCK & CO., INC.,

          Defendant.

CIVIL ACTION No. 05-CV-10583-PBS

## <u>NOTICE OF FILING CERTIFIED COPIES OF STATE COURT PAPERS</u>

Pursuant to 28 U.S.C. § 1446, defendant hereby files certified copies of all records and

proceedings in the superior court action (Barnstable County Superior Court Civil Action No.

BA-2005-0098).

MERCK & CO., INC.
By its attorneys:

James J. Dillon (BBO# 124660)
Bradley E. Abruzzi (BBO# 651516)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02110-2600
(617) 832-1000

Dated: April 12, 2005

B3005019.1

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing NOTICE OF FILING STATE COURT PAPERS was served on April 12, 2005 by regular mail, upon:

Philip F. Mulvey, Jr.
Law Office of Philip F. Mulvey, Jr., P.C.
536 Main Street
Falmouth, Massachusetts  02540
**Counsel for Plaintiff John D. Lach**

# Commonwealth of Massachusetts

BARNSTABLE, ss.

**SUPERIOR COURT**

No.  05-98

I, Scott W. Nickerson, Clerk-Magistrate of the Superior Court within and for said County of Barnstable, having, by law, the custody of the seal and all the records, books, documents and papers of, or appertaining to said Court, hereby certify that the papers hereto annexed are true copies of the papers appertaining to said Court, and on file and of record in the Office of said Court, relating to the case of JOHN D. LACH vs. MERCK & CO., INC., case #05-98

In witness whereof, I have hereunto set my hand and the seal of said Court, this seventh day of April in the year of our Lord two thousand five.

Clerk-Magistrate

MAS-20041213
birelyka

# Commonwealth of Massachusetts
## BARNSTABLE SUPERIOR COURT
### Case Summary
### Civil Docket

## BACV2005-00098
### Lach v Merck & Co Inc

| | | | | |
|---|---|---|---|---|
| **File Date** | 02/22/2005 | **Status** | Disposed: transferred to other court (dtrans) | |
| **Status Date** | 04/07/2005 | **Session** | A - Civil A- Barnstable Superior Court | |
| **Origin** | 1 | **Case Type** | B06 - Medical malpractice | |
| **Lead Case** | | **Track** | A | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 05/23/2005 | **Answer** | 07/22/2005 | **Rule12/19/20** | 07/22/2005 |
| **Rule 15** | 05/18/2006 | **Discovery** | 04/13/2007 | **Rule 56** | 06/12/2007 |
| **Final PTC** | 10/10/2007 | **Disposition** | 02/22/2008 | **Jury Trial** | Yes |

**Plaintiff**
John D  Lach
Active 02/22/2005

**Private Counsel 360880**
Philip F Mulvey Jr
536 Main Street
Falmouth, MA 02540
Phone: 508-457-0998
Fax: 508-457-7815
Active 02/22/2005 Notify

**Defendant**
Merck & Co Inc
Served: 03/07/2005
Served (answr pending) 03/17/2005

**Private Counsel 651516**
Bradley E. Abruzzi
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02110-2600
Phone: 617-832-1000
Fax:
Active 04/05/2005 Notify

**Private Counsel 124660**
James J Dillon
Goodwin Procter
53 State Street
Exchange Place
Boston, MA 02109
Phone: 617-570-1000
Fax: 617-523-1231
Active 04/05/2005

| Date | Paper | Text |
|---|---|---|
| 02/22/2005 | | Filing fee paid in the amount of $275.00 including $15.00 surcharge and $20.00 security fee. |
| 02/22/2005 | 1.0 | COMPLAINT with jury claim & civil action cover sheet filed |
| 02/22/2005 | | Origin 1, Type B06, Track A. |
| 03/17/2005 | 2.0 | SERVICE RETURNED:  Merck & Co Inc(Defendant) on March 7, 2005 |
| 04/04/2005 | 3.0 | Notice of removal to U.S. District Court |
| 04/07/2005 | | Case REMOVED this date to US District Court of Massachusetts |

case01 219892 y y y y y y

MAS-20041213
birelyka

04/07/2005
03:03 PM

**Commonwealth of Massachusetts**
BARNSTABLE SUPERIOR COURT
Case Summary
Civil Docket

# BACV2005-00098
## Lach v Merck & Co Inc

| Date | Session | Event | Result |
|------|---------|-------|--------|
| 03/31/2005 | Civil A- Barnstable Superior Court | Status: administrative | Event held as scheduled |
| | | left mess. for Bradley Abruzzi - notice of filing notice of removal not stamped with US District Court stamp (cert.) | |
| 04/05/2005 | Civil A- Barnstable Superior Court | Status: administrative | Event held as scheduled |
| | | Spoke to Atty B. Abruzzi - $25.50 needed for removal copies | |

case01 219892 y y y y y y

| .CIVIL ACTION COVER SHEET | DOCKET NO.(S) 05-98 | Trial Court of Massachusetts Superior Court Department County: Barnstable |
|---|---|---|

| PLAINTIFF(S) John D. Lach | DEFENDANT(S) Merk & Co., Inc. | SUPERIOR COURT BARNSTABLE SS |
|---|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Philip F. Mulvey, Jr.: 356 Main St. Falmouth, MA 02540: (508) 457-0998 Board of Bar Overseers number: 360880 | ATTORNEY (if known) | FILED  FEB 2 2 2005  _Scott W. Nickerson_ Clerk |
|---|---|---|

### Origin code and track designation

Place an x in one box only:
- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B06 | Other Negligence - Personal Injury | ( F ) | ( X ) Yes    ( ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine ney damages. For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses (estimated, not all bills received yet) . . . . . . . . . . . . . . . . . . . $4,800.00 . . . .
   2. Total Doctor expenses (estimated, not all bills received yet) . . . . . . . . . . . . . . . . . . $ 8,800.00 . . . .
   3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . .
   4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . .
   5. Total other expenses (describe)(estimated, not all bills received yet) . . . . . . . . . . $ 5,500.00 . . . .
                                                                      **Subtotal $** . 19,100.00 . .
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . unable to determine . . . . . . . . . . $ . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . .
F. Other documented items of damages (describe)
                                                                                        $ . . . . . . .

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)
   Plaintiff began taking Vioxx, a drug manufactued by the Defendant, in March of 2000.  Within less than one year, the Plaintiff developed chest pain/heart problems.  Within less than 2 years the Plaintiff developed unstable angina which led to a quintuple coronary artery $. 100,000.00 . bypass and congestive heart failure                        **TOTAL $** 119,100.00 . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):



                                                                      **TOTAL $.** . . . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT                None

**"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."**

Signature of Attorney of Record  _Philip F Mulvey_                        DATE: 2-17-05

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

SUPERIOR COURT
BARNSTABLE ss

FILED    FEB 2 2 2005
_Scott W. Nickerson_ Clerk

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, ss

SUPERIOR COURT DEPARTMENT
DOCKET NO.: 05-98

| JOHN D. LACH, | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| MERCK & CO., INC., | ) |
| Defendant | ) |

## COMPLAINT AND
## JURY REQUEST

John D. Lach, by and through his undersigned counsel, alleges as his Complaint against the Defendant as follows:

### PARTIES

1.  John D. Lach, at all times relevant hereto, has resided in South Yarmouth, Barnstable County, Massachusetts and took the drug Vioxx at points in time between 2000 and 2001. As used herein, "Plaintiff" shall refer to John D. Lach unless specifically noted otherwise.

2.  At all times relevant herein, Defendant Merck & Co., Inc. (Merck), was and is an American pharmaceutical company incorporated under the laws of the State of New Jersey with its principal place of business at One Merck Drive, P.O. Box 100, Whitehouse Station, New Jersey and is licensed to do business in the Commonwealth of Massachusetts. The Defendant was and is in the business of profiting from the design, manufacture, marketing, distribution and/or sales of the brand-name prescription drug Vioxx (rofecoxib).

### FACTUAL ALLEGATIONS

3.  This action arises from the sales and efficacy of Vioxx, a pain-relief drug containing rofecoxib. Vioxx is a selective COX-2 inhibitor marketed by the Defendant as an anti-inflammatory analgesic.

4.  Defendant, Merck obtained FDA approval on Vioxx in approximately May of 1999 and began its distribution and sale throughout the United States in approximately May of 1999. Vioxx is a brand name used by Merck to market and distribute rofecoxib.

5.  Defendant Merck distributed and sold Vioxx to consumers such as the Plaintiff. Vioxx was approved for marketing based on information in the New Drug Application, which was on a fast-track, six-month approval process to the FDA.

1

6.    Despite knowledge in its clinical trials and post-marketing reports, studies and information relating to cardiovascular-related adverse health effects, the Defendant promoted and marketed Vioxx as safe and effective for persons such as the Plaintiff.

7.    The Defendant concealed the serious cardiovascular risks associated with Vioxx because a successful launch of Vioxx was viewed as critical for Merck and safety concerns over hypertension, thrombosis, edema and/or cardiovascular events would have drastically impacted Merck's positioning in the market as compared to its competition's drug, Celebrex (celecoxib), which had been placed into the Market by Merck competitors Pharmacia and Pfizer some three months prior to the launch of Vioxx.

8.    Merck knowingly chose to market this product, despite its knowledge at product launch and in post-marketing data thereafter that the use of Vioxx carried significant risk factors. These adverse effects were realized in adverse event reports, in clinical trials where such events were adjudicated by primary investigators with Merck's assistance, and in one or more studies shortly after market launch which showed statistically significant increases in adverse cardiovascular events among Vioxx users.

9.    In industry sponsored studies presented at the European United League Against Rheumatism (EULAR), an organization in which Merck is a member and corporate sponsor, in June of 2000, it was shown that Vioxx use resulted in a statistically significant increase in hypertension and myocardial infarction. Merck did nothing to publish these studies, which were again reported and denied by Merck as to the hypertension problems in the official publication of the American Pharmaceutical Association, Pharmacy Today, Spin War Aside, Lessons Emerge From COX-2 Trials, in August 2000, page 3.

10.   Merck continued to deny the ill health effects associated with Vioxx while at the same time reaping the profits obtained through the non-disclosure. Merck engaged in an aggressive and expansive advertising and sampling program and gained continued increases in market share, which enhanced Merck's financial stability to the detriment of its consumers. The resultant effect to Merck in concealing and failing to reveal and warn of the risks was a more than $2 billion profit in 2000 alone to Merck and an approximately twenty three percent (23%) share of the market.

11.   The profits to Merck were realized as it continued to withhold relevant data from the Plaintiff and the health care industry generally. For example, in November of 2000, Merck caused the publication of a study in the New England Journal of Medicine and knowingly downplayed and/or withheld from this publication the severity of cardiovascular risks associated with Vioxx consumption over naproxen consumption.

12.   On or about August 29, 2001, the Journal of the American Medical Association published a peer-reviewed human epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, Dr. D. Mukherjee, et al., showing what Merck had concealed – that the relative risk of developing a "confirmed adjudicated thrombotic cardiovascular event" (defined in the article as "myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac

arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks") among Vioxx users in Merck's trials at a ninety five percent (95%) confidence interval ranged from 2.2 for event-free survival analysis, 2.38 compared to naproxen users, and 4.89 for developing serious cardiovascular events among aspirin-indicated patients. See Mukherjee, D., et al., *Risk of Cardiovascular Events Associated with Selective Cox-2 Inhibitors,* JAMA, 286:8, 954-959, August 22/29, 2001. In addition, the annualized myocardial infarction rates for Vioxx users compared to placebo revealed a statistically significant increase among Vioxx users. *Id.*

13.    In responsive Merck-authored and sponsored reviews, Merck set forth the theory that naproxen had a cardioprotective effect and therefore accounted for the cardiovascular risks among its Vioxx users. However, this theory was debunked in approximately January of 2002, by a Vanderbilt University School of Medicine human epidemiologic peer-reviewed study published in The Lancet, concluding that based upon information previously available there is an absence of a protective effect of naproxen or other non-aspirin, non-steroidal, anti-inflammatory drugs on risk of coronary heart disease. Ray, W., et al., *Non-Steroidal Anti-inflammatory Drugs and Risk of Serious Coronary Heart Disease: An Observational Cohort Study,* The Lancet, 359:118-123, Jan. 12, 2002.

14.    In mid-September, 2001, Merck received a *third* Warning Letter from the FDA stating, in part, that the Defendant's promotional activities and materials are "false, lacking in fair balance, or otherwise misleading in violation of the Federal Food, Drug, and Cosmetic Act (the "Act") and applicable regulations." The FDA stated that the Defendant's promotional campaign "minimized the potential serious cardiovascular findings" from a Vioxx study and "misrepresents the safety profile for Vioxx." As to Merck's May 22, 2001, press release, the FDA wrote "your claim in the press release that Vioxx has a 'favorable safety profile' is simply incomprehensible, given the rate of MI [myocardial infarction] and serious cardiovascular events compared to naproxen. The implication that Vioxx's cardiovascular profile is superior to other NSAIDs is misleading; in fact, serious cardiovascular events were twice as frequent in the VIOXX treatment group ... as in the naproxen treatment group..."

15.    In approximately April of 2002, Merck was required to place cardiovascular warnings on its Vioxx labeling based on the results of the VIGOR study. In addition, Merck was required to place new label warnings relaying that Vioxx 50 mg per day is not recommended for chronic use. These warnings were based on information that had been in Merck's possession by approximately January of 2000 at the latest and, as such, Merck did not meet its obligation to provide "direction or warnings" as to the use of Vioxx within the meaning of Section 402 of the Restatement (Second) of Torts or otherwise. Neither did Merck fulfill its alleged obligation to warn the prescribing health care provider of these risks.

16.    On September 30, 2004, Vioxx was withdrawn from the market worldwide when the data safety monitoring board overseeing a long-term study of Vioxx recommended that the study be halted because of an increased risk of serious cardiovascular events, including heart attacks, and strokes, among patients taking Vioxx.

3

17.   At all times relevant to this litigation, Defendant Merck had a significant market share based upon claims of Vioxx's efficacy, a very aggressive marketing program which included financial incentives to sales teams, infusion of some 700 new sales representatives, and a massive direct-to-consumer advertising and physician sampling program.

18.   As a result of such marketing, Vioxx gained a significant market share in competition with Celebrex that Merck would not have gained if Merck had not suppressed information about Vioxx and/or made false representations of Vioxx's superiority and efficacy.

19.   If the Defendant had not engaged in this conduct, prescribers such as Plaintiff's prescriber would not have prescribed Vioxx and patients, such as the Plaintiff, would have switched from Vioxx to safer products or would have refrained wholly from any use of Vioxx.

20.   From approximately 1999 through the present, the Defendant continued to engage in a common scheme in marketing, distributing and/or selling Vioxx under the guise that it was safe and efficacious for persons such as the Plaintiff.

21.   The Plaintiff alleges that the suppression of this information constituted a common scheme by the Defendant to conceal material information from the Plaintiff.

22.   The Plaintiff alleges that the marketing strategies, including, without limitation, the detail and sampling programs and direct-to-consumer advertising, of the Defendant targeted the Plaintiff to induce the Plaintiff to purchase Vioxx. At the time the Defendant distributed, manufactured, and marketed Vioxx, the Defendant intended that the Plaintiff would rely on the marketing, advertisements and product information propounded by the Defendant.

23.   The actions of the Defendant, in failing to warn of the clear and present danger posed to others by the use of its drug Vioxx, in suppressing evidence relating to this danger, and in making deliberate and misleading misrepresentations of fact to minimize the danger or to mislead prescribers and patients as to the true risk, constitutes such clear, blatant and outrageous conduct as to warrant the imposition of exemplary damages against the Defendant.

24.   The Plaintiff began taking Vioxx, 12.5 mg on or about March 10, 2000.

25.   On or about May 24, 2000, Mr. Lach had a myocardial perfusion imaging study performed at Cape Cod Hospital for he had chest pain. The study indicated evidence of inferior apical scar consistent with infarct of unknown age and mild to moderate peri-infarct ischemia, inducible by exercise. The Plaintiff had a myocardial infarction in 1983.

26.   About June 13, 2001, the Plaintiff was admitted to Cape Cod Hospital for evaluation of episodes of what sounded like myoclonus. At that time he was on Vioxx. His Dilantin was increased for it appeared to have been subtheraputic.

4

27.   On or about March 4, 2003, the Plaintiff entered Cape Cod Hospital for unstable angina. His past medical history indicated a myocardial infarction in 1983 and he did well until the year 2000, when he underwent cardial cathterterization which revealed an occluded right coronary artery and additional stenosis in the diagonal and marginal branches. At the time of admission screening CPK isoenzymes were initially normal, as was the troponin I, but soon after the latter was elevated at 2.5, 2.5, consistent with an acute myocardial infarction. Cardial Cathterterization indicated a number of problems; an intra-aortic balloon was placed, his iv nitroglycerin was increased and he was being considered for surgical revascularization.

28.   On or about March 5, 2003, the Plaintiff underwent Quintuple Coronary Artery Bypass Grafting at Cape Cod Hospital and was discharged on or about March 11, 2003.

29.   On or about May 29, 2003, the Plaintiff underwent a doppler echocardiogram for congestive heart failure. The result was, decreased left ventricle systolic function with anteroseptal and anterior wall motion abnormalities.

30.   The Plaintiff was admitted to Cape Cod Hospital on May 6, 2003, for profound metabolic abnormality and renal insufficiency. A renal artery duplex study on May 22, 2003, indicated a small infrarenal abdominal aortic aneurysm; the right kidney is smaller than the left measuring 10.3 cm on the right and 12.1 cm on the left.

31.   On or about May 28, 2003, the Plaintiff was admitted to Cape Cod Hospital with decompensated congestive heart failure (CHF). An echocardiogram demonstrated moderately sever mitral regurgitation, septal and anterior wall motion abnormalities, ejection fraction 45 - 50%. An EKG showed a normal sinus rhythm with first degree AV block. Impression was dilated ischemic cardiomyopathy with moderate depression of systolic function.

## COUNT I: NEGLIGENCE

32.   The Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

33.   The Defendant, directly or indirectly, negligently manufactured, designed, tested, labeled, packaged, distributed, promoted, marketed, advertised, or sold Vioxx (rofecoxib) in the stream of commerce, when the Defendant knew, or in the exercise of ordinary care, should have known that Vioxx posed a significant risk to the Plaintiff's health and well-being, which risk was not known to the Plaintiff or his prescriber.

34.   At all times material hereto, the Defendant had a duty to the Plaintiff to exercise reasonable care in the design, testing, labeling, packaging, distribution, promotion, marketing, advertisement, sampling or sale of Vioxx (rofecoxib).

5

35.    The Defendant breached its duty and was negligent in its actions, misrepresentations, and omissions towards the Plaintiff in that the Defendant:

a.    Failed to include adequate warnings with the medications that would alert the Plaintiff and other consumers to the potential risks and serious side effects of Vioxx ingestion;

b.    Failed to include adequate information or warnings with the medication that would alert the Plaintiff and the health care community to refrain from use of Vioxx without first prescribing traditional NSAIDs such as naproxen or ibuprofen;

c.    Failed to adequately and property test Vioxx before and after placing it on the market;

d.    Failed to conduct sufficient testing on Vioxx which, if properly performed, would have shown that Vioxx had serious side effects, including, but not limited to the cardiovascular events described above;

e.    Failed to adequately warn Plaintiff and his health care providers that the use of Vioxx carried a risk of cardiovascular events, stroke and death; among other serious side effects;

f.    Failed to provide adequate post-marketing warnings or instructions after the Defendant knew or should have known of the significant risks of personal injury and death as identified herein among other serious side effects from the use of Vioxx;

g.    Failed to adequately warn the Plaintiff that Vioxx should not be used in conjunction with any risk factors for these adverse effects such as a family history of ischemic heart disease, or risk factors for ischemic cardiovascular disease;

h.    Failed to adequately disclose and warn the Plaintiff that he undertook the risk of adverse events and death as described herein;

i.    Failed to adequately and timely inform the health care industry of the risks of serious personal injury and death from Vioxx ingestion as described herein.

36.    The Defendant knew or should have known that Vioxx caused unreasonably dangerous risks and serious side effects, including death, of which the Plaintiff would not be aware. Defendant Merck nevertheless advertised, marketed, sold and distributed the drug knowing that there were safer methods and products.

37.    As a direct and proximate result of the negligence and breach of the Defendant, the Plaintiff sustained serious injury. The Defendant owed a duty to the Plaintiff to use reasonable care in its actions. The Defendant's failure to use reasonable care proximately caused the Plaintiff's injuries.

6

## COUNT II: STRICT LIABILITY (Failure to Warn)

38.  The Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

39.  The Defendant, as a manufacturer and supplier of Vioxx, failed to provide proper warnings regarding all possible adverse side effects regarding the use of Vioxx, as well as the severity and duration of such adverse effects.

40.  The Defendant failed to perform adequate testing that would have shown that Vioxx possessed serious potential side effects with respect to which full warnings were needed.

41.  The Defendant, a manufacturer and supplier of Vioxx, failed to provide adequate post-marketing warning and instruction because, after the Defendant knew or should have known of the risk of injury and deaths from Vioxx, the Defendant failed to provide adequate warnings and continued to aggressively promote Vioxx.

42.  As the direct and proximate result of the defective condition and inadequate warning of Vioxx:

   a.  The Plaintiff suffered personal injury;

   b.  The Plaintiff suffered economic loss; and

   c.  The Plaintiff expended, and may in the future be required to expend, fair and reasonable expense on necessary health care, attention and services, and incurred incidental and related expenses.

## COUNT III: STRICT LIABILITY (Design Defect)

43.  The Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as through set forth in full herein.

44.  The Plaintiff ingested Vioxx, a medication that was either manufactured, distributed, sold, prescribed and/or otherwise put into the stream of commerce by the Defendant Merck. The defective condition of Vioxx rendered it unreasonably dangerous, and that said Vioxx was in this defective condition at the time it left the hands of the Defendant.

45.  The Defendant engaged in the manufacture, distribution, sale and/or prescription of pharmaceutical medications. Vioxx, without substantial change in the condition in which it was sold, was a proximate cause of the Plaintiff's injuries.

46.  The Plaintiff was unaware of the significant hazards and defects in the Vioxx medication. Therefore, the Vioxx medication was unreasonably dangerous in that it was more dangerous than would be reasonably contemplated by the ordinary user. During the periods that the

7

Plaintiff was taking Vioxx, the medication was being utilized in a manner which was intended by the Defendant.

47.    Vioxx was defectively designed because the foreseeable risks exceeded the benefits associated with the design or formulation.

48.    Additionally, Vioxx is defective due to inadequate clinical trials, testing, study, and inadequate reporting regarding the results of the same.

49.    The Defendant designed, manufactured and/or placed into the stream of commerce the product, which reached the Plaintiff in the same or substantially the same condition in which it was sold. Upon purchase by the Plaintiff, the product in question was represented to be safe and free from latent defects.

50.    The Defendant is strictly liable to the Plaintiff for designing, manufacturing, and placing into the stream of commerce the product which was unreasonably dangerous for its reasonably foreseeable uses at the time it left the control of the Defendant because of the design defects which were a producing cause of the occurrence in question.

51.    The product in question was defectively marketed by the Defendant with respect to its failure to warn, adequately warn, or instruct in the safe use of the product and such defect was a producing cause of the occurrence in question.

52.    The Defendant knew, or in the exercise of ordinary care should have known, that the product was defective and unreasonably dangerous to those persons likely to use the product for the purpose and in the manner for which it was intended to be used. The Defendant was negligent in the particulars set forth in this and the preceding paragraphs and such negligence was a proximate cause of the occurrence in question.

53.    The Defendant owed the Plaintiff the duty of reasonable care when they tested, designed, manufactured, and marketed the product in question. The Defendant violated their duty and were negligent in the particulars set forth herein.

54.    Defendant Merck is also strictly liable to the Plaintiff under Section 402B of the Restatement (Second) of Torts in misrepresenting to the public that its product was safe and without defect, which statement and representation as false and involved a material fact concerning the character or quality of the product in question, and upon which representations the consumer constructively relied, and which constituted a producing cause of the injury at issue.

55.    Further, each of the above and foregoing acts or omissions of the Defendant were more than momentary thoughtlessness, inadvertence, or error of judgement. Such acts or omissions constituted such an entire want of care as to establish that the acts or omissions were the result of actual conscious indifference to the rights, safety, or welfare of the persons affected.

8

## COUNT IV: NEGLIGENT FAILURE TO WARN

56.   The Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

57.   Vioxx was not accompanied by appropriate warnings of the increased risk of adverse side effects caused by the ingestion of Vioxx.

58.   The Defendant negligently failed to warn consumers who took Vioxx that it was dangerous.

59.   The Defendant's negligence was the proximate cause of the harm suffered by the Plaintiff.

60.   As a direct and proximate cause of the Defendant's negligence:

    a.    The Plaintiff suffered personal injuries;

    b.    The Plaintiff suffered economic loss; and

    c.    The Plaintiff expended, and will in the future be required to expend, fair and reasonable expenses for necessary health care, attention and services and incurred incidental and related expenses.

## COUNT V: NEGLIGENCE PER SE

61.   The Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

62.   The Defendant was negligent per se because it violated applicable statutes and regulations relating to prescription drugs. The Plaintiff is a person whom these statutes and regulations were meant to protect.

63.   The Defendant's negligence was the proximate cause of the harm suffered by the Plaintiff.

64.   As a direct and proximate cause of the Defendant's negligence:

    a.    The Plaintiff suffered personal injuries;

    b.    The Plaintiff suffered economic loss, including loss of earnings and loss of earning capacity;

    c.    The Plaintiff expended, and will in the future be required to expend, fair and reasonable expenses for necessary health care, attention and services and incurred incidental and related expenses.

9

## COUNT VI: MISREPRESENTATION AND SUPPRESSION

65.    The Plaintiff restates each and every preceding allegation of this Complaint and incorporates each be reference as though set forth in full herein.

66.    The Defendant misrepresented to the Plaintiff and the health care industry the safety and effectiveness of Vioxx and/or fraudulently, intentionally and/or negligently concealed material information, including adverse information regarding the safety and effectiveness of Vioxx.

67.    The Defendant made misrepresentations and actively concealed adverse information at a time when the Defendant knew, or should have known, that Vioxx had defects, dangers, and characteristics that were other than what the Defendant had represented to the Plaintiff and the health care industry generally. Specifically, the Defendant misrepresented to and/or actively concealed from the Plaintiff, the health care industry, and the consuming public that:

   a.    Vioxx had statistically significant increases in cardiovascular side effects, including, without limitation, thrombosis, myocardial infarction and sudden onset death, identified herein which could result in serious injury or death;

   b.    There had been insufficient and/or company-spun studies regarding the safety and efficacy of Vioxx before and after its product launch;

   c.    Vioxx was not fully and adequately tested for the cardiovascular side effects at issue herein;

   d.    Other testing and studies showed the risk of or actual serious adverse risks; and/or that

   e.    There was a greatly increased risk of such cardiovascular events and death; there was a confirmed mechanism by which these thrombotic or cardiovascular events occurred as reported in the scientific literature.

68.    The misrepresentations of and/or active concealment alleged were perpetuated directly and/or indirectly by the Defendant.

69.    The Defendant knew or should have known that these representations were false and made the representations with the intent or purpose that the Plaintiff would rely on them, leading to the use of Vioxx.

70.    At the time of the Defendant's fraudulent misrepresentations, the Plaintiff was unaware of the falsity of the statements being made and believed them to be true. The Plaintiff had no knowledge of the information concealed and/or suppressed by the Defendant.

10

71.    The Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment and relied on the absence of safety information which the Defendant did suppress, conceal or failed to disclose to the Plaintiff's detriment.

72.    The Defendant had a post-sale duty to warn the Plaintiff and the public about the potential risks and complications associated with Vioxx in a timely manner.

73.    The misrepresentations and active, fraudulent concealment by the Defendant constitutes a continuing tort against the Plaintiff, who ingested Vioxx.

74.    The Defendant made the misrepresentations and actively concealed information about the defects and dangers of Vioxx with the intention and specific desire that the Plaintiff's health care professionals and the consuming public would rely on such or the absence of information in selecting Vioxx as treatment.

75.    As a direct and proximate result of the fraudulent acts and omissions, suppression and misrepresentation of the Defendant, the Plaintiff suffered significant and ongoing injury and damages.

### COUNT VII: BEACH OF WARRANTY

76.    The Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

77.    When the Defendant placed Vioxx into the stream of commerce, the Defendant knew of the use for which it was intended and expressly and impliedly warranted to Plaintiff that the use of Vioxx was a safe and acceptable means of treatment.

78.    The Plaintiff reasonably relied upon the expertise, skill, judgment and knowledge of the Defendant and upon the express and/or implied warranty that Vioxx was of merchantable quality and fit for use as intended.

79.    Vioxx was not of merchantable quality and was not safe or fit for its intended use because it was and continues to be unreasonable dangerous and unfit for the ordinary purposes for which it is used in that it caused injury to the Plaintiff.  Merck breached the warranty because Vioxx was unduly dangerous and unfit for the ordinary purposes for which it is used in that it caused injury to the Plaintiff. Merck breached the warranty because Vioxx was unduly dangerous in expected use and did cause undue injury to the Plaintiff.

80.    The Defendant breached the implied warranty of merchantability because Vioxx cannot pass without objection in the trade, is unsafe, not merchantable, and unfit for its ordinary use when sold, and is not adequately packaged and labeled.

81.    As a direct and proximate result of the Defendant's breach of the warranty of merchantability, the Plaintiff sustained serious and permanent injuries.

11

## COUNT VIII: BREACH OF EXPRESS WARRANTY

82.    The Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

83.    The Defendant expressly warranted to the market, including the Plaintiff, by and through statements made by the Defendant or its authorized agents or sales representatives, orally and in publications, package inserts, and other written materials to the health care community, that Vioxx was safe, effective, fit and proper for its intended use

84.    In using Vioxx, the Plaintiff relied on the skill, judgement, representations, and foregoing express warranties of the Defendant. These warranties and representations provided to be false because the product was not safe and was unfit for the uses for which it was intended.

85.    As a direct and proximate result of the Defendant's breaches of warranties, the Plaintiff was injured and suffered special and compensatory damages to be proved at trial.

## COUNT IX: FRAUD

86.    The Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

87.    The Defendant committed actual fraud by making material representations, which were false, knowing that such material representations were false and/or with reckless disregard for the truth or falsity of such material representations, with the intent that the Plaintiff rely on such material representations; the Plaintiff acted in actual and justifiable reliance on such material misrepresentations and was injured as a result.

88.    In addition, and in the alternative if necessary, the Defendant knowingly omitted material information, which omission constitutes a positive misrepresentation of material fact, with the intent that the Plaintiff rely on the Defendant's misrepresentations; Plaintiff acted in actual and justifiable reliance on Defendant's representations and was injured as a result.

89.    The Defendant committed constructive fraud by breaching one or more legal or equitable duties owed to the Plaintiff relating to the Vioxx at issue in this lawsuit, said breach or breaches constituting fraud because of their propensity to deceive others or constitute an injury to the public interest or public policy.

## COUNT X: UNJUST ENRICHMENT

90.    The Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

91.    The Defendant accepted payment from the Plaintiff for the purchase of Vioxx.

92.    The Plaintiff did not receive a safe and effective drug for which he paid.

93.    It would be inequitable for the Defendant to retain this money because the Plaintiff did not, in fact, receive a safe and efficacious drug.

## DEMAND FOR RELIEF

WHEREFORE, the Plaintiff demands judgment against the Defendant for damages, as well as all costs of this action, to the full extent of the law, including:

    a.    Damages to compensate the Plaintiff for injuries sustained as a result of Vioxx use, past and future lost income, and future medical expenses as proven at trial;

    b.    Physical pain and suffering of the Plaintiff;

    c.    Pre and post-judgment interest at the lawful rate;

    d.    Reasonable attorney's fees and costs; and,

    e.    Such other applicable damages as the Court deems appropriate.

## JURY REQUEST

The Plaintiff respectfully requests a trial by jury.

                For the Plaintiff,
                John D. Lach,
                By his Attorney,

                Philip F. Mulvey, Jr.
                BBO #: 360880
                Law Office of Philip F. Mulvey, Jr., P.C.
                536 Main Street
                Falmouth, MA 02540
                (508) 457-0998

Dated: February 16, 2005

13

(TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: CONTRACT    TORT
MOTOR VEHICLE TORT        EQUITABLE RELIEF              OTHER)



# Commonwealth of Massachusetts

BARNSTABLE, ss.
                                                           SUPERIOR COURT
                                                           No.  BACV2005-00098

                                                    ┌─────────────────────────────┐
                                                    │   SUPERIOR COURT            │
                                                    │   BARNSTABLE SS             │
         JOHN D. LACH                               │ FILED   MAR 1 7 2005        │
              VS.                                   │        Scott W. Nickerson   │
         MERCK & CO., INC.                          │                      Clerk  │
                                                    └─────────────────────────────┘

## SUMMONS

To the above-named defendant : Merck & Co., Inc.

    You are hereby summoned and required to serve upon ......Philip F. Mulvey, Jr.......................................
536 Main St., Falmouth, MA 02540 ......................................... plaintiff's attorney, whose address is
..................................................................................................................................., an answer to the
complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Barnstable either before service upon plaintiff's attorney or within a reasonable
time thereafter.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

    **Witness,**        BARBARA J. ROUSE  **Esquire,** at Barnstable, the ................28th.......

day of ......February........................., in the year of our Lord two thousand and .......five................. .

                              Scott W. Nickerson  Clerk

**NOTE:** When more than one defendant is involved, the names of all defendants shall appear in the caption. If a
separate summons is issued for each defendant, each should be addressed to the particular defendant.

## NOTICE TO DEFENDANT

You need not appear personally in court to answer the complaint but if you claim to have a defense,
either you or your attorney must serve a copy of your written answer within 20 days as specified
herein and also file the original in the Clerk's office.

(TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: CONTRACT   TORT
                                  MOTOR VEHICLE TORT        EQUITABLE RELIEF        OTHER)

# Commonwealth of Massachusetts

BARNSTABLE, ss.                                         SUPERIOR COURT
                                                        No. BACV2005-00098

### A TRUE COPY ATTEST

*Russell Castagna*

**Constable and Disinterested Person**
3-7-05

JOHN D. LACH
VS.
MERCK & CO., INC.

COPY

### SUMMONS

To the above-named defendant : Merck & Co., Inc.

You are hereby summoned and required to serve upon ...Philip E. Mulvey, Jr............
536 Main St., Falmouth, MA 02540 ..................... plaintiff's attorney, whose address is
...................................................................................................... an answer to the
complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Barnstable either before service upon plaintiff's attorney or within a reasonable
time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness,        BARBARA J. ROUSE   Esquire, at Barnstable, the ........28th........................
day of ...February.............................., in the year of our Lord two thousand and ........five............

*Scott W. Nickerson*   Clerk

NOTE: When more than one defendant is involved, the names of all defendants shall appear in the caption. If a
separate summons is issued for each defendant, each should be addressed to the particular defendant.

### NOTICE TO DEFENDANT

You need not appear personally in court to answer the complaint but if you claim to have a defense,
either you or your attorney must serve a copy of your written answer within 20 days as specified
herein and also file the original in the Clerk's office.

**CT CORPORATION**
A Wolters Kluwer Company

**Service of Process
Transmittal**
03/07/2005
Log Number 510019448



TO:  Debra A Bollwage
     Merck & Co., Inc.
     One Merck Drive
     Whitehouse Station, NJ, 08889-0100

RE:  **Process Served in Massachusetts**

FOR:  Merck & Co., Inc.  (Domestic State: NJ)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

**TITLE OF ACTION:**              John D Lach, Plif Vs Merck and Co, Inc, Dft

**DOCUMENT(S) SERVED:**           Summons, Complaint

**COURT/AGENCY:**                 Barstable County Superior Court, MA
                                  Case # BACV2005-00088

**NATURE OF ACTION:**             Negligence, Failure to Warn

**ON WHOM PROCESS WAS SERVED:**   C T Corporation System, Boston, MA

**DATE AND HOUR OF SERVICE:**     By Process Server on 03/07/2005 at 14:45

**APPEARANCE OR ANSWER DUE:**     Within 20 Days

**ATTORNEY(S) / SENDER(S):**      Philip E Mulvey Jr
                                  536 Main Street
                                  Falmouth, MA, 02540

**ACTION ITEMS:**                 SOP Papers with Transmittal, via Fed Ex Priority Overnight, 791486539226

**SIGNED:**                       C T Corporation System
**PER:**                          Dahriena Mitchell
**ADDRESS:**                      101 Federal Street
                                  Boston, MA, 02110
**TELEPHONE:**                    617-757-6403

---

Page 1 of 1 / AL

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal
opinion as to the nature of action, the amount of damages, the
answer date, or any information contained in the documents
themselves. Recipient is responsible for interpreting said
documents and for taking appropriate action.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SUPERIOR COURT
BARNSTABLE SS

FILED   APR 0 4 2005

_Scott L. Nickerson_ Clerk

JOHN D. LACH,

      Plaintiff,

    v.

MERCK & CO., INC.,

      Defendant.

CIVIL ACTION No. **05-10583-PBS**

RECEIPT # _63009_
AMOUNT $ _250.00_
SUMMONS ISSUED _N/A_
LOCAL RULE 4.1 ___
WAIVER FORM ___
MCF ISSUED ___
BY DPTY. CLK. _M.P._
DATE _3/2/05_

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. § 1446, defendant Merck & Co, Inc. ("Merck") files this Notice of

Removal and states:

MAGISTRATE JUDGE _RBC_

    1.    Merck is the single named defendant in an action commenced against it by the

plaintiff, John D. Lach, pending in Barnstable County Superior Court in the Commonwealth of

Massachusetts, captioned Lach v. Merck & Co, Inc., Civil Action No. BA-2005-00098 (the

"Superior Court action"). True copies of all process, pleadings and orders served on Merck in

the Superior Court action are attached hereto as Exhibit A and specifically incorporated herein.

    2.    In his Complaint, Plaintiff John D. Lach alleges that he is a resident of

Massachusetts. Complaint & Jury Request ¶ 1. Defendant Merck is a corporation organized

under the laws of the State of New Jersey with a principal place of business at One Merck Drive,

Whitehouse Station, New Jersey. There is, therefore, complete diversity of citizenship.

    3.    The Plaintiff claims compensatory damages for injuries "consistent with an acute

myocardial infarction" that resulted in a "Quintuple Coronary Artery Bypass Grafting"

procedure, past and future lost income, future medical expenses, and physical pain and suffering.

Id. ¶¶ 25-31, "Demand for Relief." Accordingly, Merck submits that the amount in controversy

in the state action will exceed the sum or value of $75,000, exclusive of interest and costs.

I hereby certify that the foregoing document

electronically filed

Original filed

Sarah

Clerk,

District

By:_____
Deputy Clerk

4.    Merck was served with a summons and a copy of plaintiff's Complaint and

Request on March 7, 2005.  Consequently, this notice is timely under 28 U.S.C. § 1446(b).

5.    This action is one of which this Court has jurisdiction pursuant to 28 U.S.C.

§ 1332 and that may be removed to this Court by Merck.

MERCK & CO., INC.
By its attorneys:

James J. Dillon (BBO# 124660)
Bradley E. Abruzzi (BBO# 651516)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02110-2600
(617) 832-1000

Dated: March 25, 2005

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing NOTICE OF REMOVAL was served on March 25, 2005 by regular mail, upon:

Philip F. Mulvey, Jr.
Law Office of Philip F. Mulvey, Jr., P.C.
536 Main Street
Falmouth, Massachusetts 02540
**Counsel for Plaintiff John D. Lach**

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, ss.
                                    SUPERIOR COURT
                                    DEPT. OF THE TRIAL COURT

JOHN D. LACH,

        Plaintiff,

            v.                      C. A. No. BA-2005-0098
                                    **NOTICE OF FILING**
MERCK & CO., INC.                   **NOTICE OF REMOVAL**

        Defendant.

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

        Please take notice that on March 25, 2005, defendant Merck & Co., Inc. filed the attached

Notice of Removal in the United States District Court for the District of Massachusetts.

                                MERCK & CO., INC.
                                By its attorneys:


                                James J. Dillon (BBO# 124660)
                                Bradley E. Abruzzi (BBO# 651516)
                                FOLEY HOAG LLP
                                155 Seaport Boulevard
                                Boston, MA 02110-2600
                                (617) 832-1000

Dated: March 25, 2005

B3005014.1

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing NOTICE TO SUPERIOR COURT OF REMOVAL TO FEDERAL COURT was served on March 25, 2005 by regular mail, upon:

Philip F. Mulvey, Jr.
Law Office of Philip F. Mulvey, Jr., P.C.
536 Main Street
Falmouth, Massachusetts  02540
**Counsel for Plaintiff John D. Lach**